IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

BILL BUOL and DARLENE CLEVENGER, )
)
        Plaintiffs, )  TC-MD 120535N
)
   v. )
)
CLATSOP COUNTY ASSESSOR, )
)
        Defendant. )  **DECISION**

Plaintiffs appeal the real market value of property identified as Account 11793 (subject

property) for the 2011-12 tax year. Plaintiffs challenge only the 2011-12 land real market value

of the subject property. A trial was held in the Tax Court Mediation Center on February 25,

2013. Plaintiff Bill Buol (Buol) appeared and testified on behalf of Plaintiffs. Catherine Harper

(Harper), Senior Appraiser, and Michael Grant (Grant), Appraiser Supervisor, appeared by

telephone and testified on behalf of Defendant. Plaintiffs' Exhibits 1 through 6 and Defendant's

Exhibits A and B were received without objection.

## I. STATEMENT OF FACTS

The subject property is a 0.09-acre lot located in the "central commercial" or "C-2" zone

in Seaside, Oregon. (Ptf's Ex 2 at 4; Def's Ex A at 5.) Harper testified that Seaside is a non-

homogenous community with residential and commercial uses intermingled in the neighborhood

of the subject property. The subject property is improved with a one-story "residential

structure." (*Id.* at 1.) Defendant described the subject property improvement as a "duplex" with

"two living areas." (*Id.*) Buol, however, testified that the subject property is not used as a

duplex.

/ / /

Buol testified that Plaintiffs purchased the subject property for $136,500 in February 2011. (Ptfs' Ex 3 at 16.) He testified that the purchase included about $10,000 of furnishings. (*See id.* at 1.) Buol characterized Plaintiffs' purchase of the subject property as "arms length." (*Id.*) Harper stated that the subject property was listed beginning in 2007 and was on the market for over 500 days. (*Id.* at 16-17.) She noted that the realtor for the subject property considered Plaintiffs' purchase to be an arm's-length transaction. (*Id.* at 16.)

Buol testified that the subject property is in "location 5," which is a neighborhood classification used by Defendant. (*See* Ptfs' Ex 1 at 5.) He testified that he received from Defendant a document stating that the site adjustment for properties "under site size .09"[1] in "location 5" is "Minus 64%." (*Id.* at 7.) Buol testified that, according to Defendant's records, the "base value" for lots in "location 5" was $130,000. (*Id.* at 5.) Buol testified that, in his view, there is no significant difference in the allowable uses of lots that are 0.09-acres, such as the subject property, and those that are less than 0.09-acres. He testified that the only difference in allowable uses is for lots of 0.11 acres or larger. Buol provided a letter from the county planning director in which the planning director stated that he is "not aware of any use provisions in the Seaside Zoning Ordinance that are based on a lot size of 3,920 square feet (.09 acres) or 3,049 square [feet] (.07 acres)." (Ptfs' Ex 2 at 4-5.) Harper testified that she did not understand how the planner director's letter supported Buol's testimony.

Buol offered additional evidence based on "Appraisal Reports" that he obtained from Defendant's online records of nearby lots that he considered comparable to the subject property. (Ptfs' Ex 2 at 8-11.) He testified that the "Appraisal Report" for the subject property that he

---

[1] According to Buol, the documents that he received from Defendant are inconsistent regarding whether the 64 percent downward adjustment is applied to lots "less than 0.09 acres" or to lots "0.09 acres and less." Buol testified that the 64 percent downward adjustment should apply to lots of 0.09 acres and less. (Ptfs' Ex 1 at 6 (document stating "lots of 0.09 acres and smaller").)

obtained from Defendant's online records stated the "land value" was $130,000 and an upward adjustment of $19,800 was made for a "base land value" of $149,800. (*Id.* at 9.) Buol testified that a 0.07-acre lot located next to the subject property with the same zoning and use as the subject property received a downward adjustment of $63,400, for a "base land value" of $66,600. (*Id.* at 10.) He provided similar evidence for a 0.09-acre lot and a 0.07-acre lot. (*Id.* at 11-12.)

Harper testified that it is unclear from the "Appraisal Reports" provided by Buol why the land values of those properties were adjusted. (*See generally* Ptfs' Ex 2 at 8-12.) She testified that land adjustments could have been made for site size, proximity to the ocean, proximity to a commercial center, or other aspects of the lots.

Buol testified that, based on his understanding of appraisal theory, the subject property land must be valued as though vacant. Buol referred to a letter from Grant setting forth the four tests for highest and best use, including "legally permissible." (Ptf's Ex 2 at 6.) He testified that, in his opinion, the highest and best use of the subject property land as vacant is commercial development. However, he offered no evidence of sales of vacant commercial land. Buol provided an excerpt from the applicable zoning ordinance regarding "nonconforming uses." (Ptfs' Ex 5.) He testified that the subject property residential dwelling is a "non-conforming use" under the "C-2" zone and would not be allowed if the land were vacant.[2] Buol testified that, because the residential structure is not "legally permissible" in the C-2 zone, the subject property should not be compared to properties for which residential development is legally permissible.

Buol provided information regarding four sales of "non-conforming lots in the area that represent a more realistic view of RMV." (Ptfs' Ex 3 at 1.) He reported that those properties ranged in size from 0.04 to 0.09 acres and sold between April 2011 and October 2011. (*Id.*)

---

[2] Grant noted that, under the applicable zone, the subject property residential dwelling could be rebuilt if it were destroyed by fire. (*See* Ptfs' Ex 5 at 2.)

Buol's reported sale prices for those properties ranged from $35,000 to $128,693. (*Id.*) Buol also provided a listing of a duplex on a non-conforming lot for $129,900. (*Id.* at 15.)

Defendant provided an appraisal report concluding that the 2011-12 real market value of the subject property was $171,000 with $115,000 allocated to the land. (Def's Ex A at 16.) Grant testified that he identified two comparable land sales; one sold for $121,000 on March 15, 2010, and the other sold for $75,000 on April 26, 2010. (*Id.* at 5.) He made adjustments for time, size, location, landscaping, and "OSD's" [on-site developments] and concluded adjusted sale prices of $137,655 and $95,625, respectively. (*Id.*) Grant testified that he also considered three improved sales that occurred between December 2010 and November 2011. (*Id.* at 11.) The adjusted prices of those sales ranged from $158,408 to $194,614. (*Id.*)

Buol testified that he disagreed that Defendant's vacant land sale 1 was arm's-length because it was purchased by the owner of the adjoining lot. (Ptfs' Ex 3 at 1, 6, 11.) He noted that another lot across the street from Defendant's land sale 1 was listed for $75,000. (*Id.* at 10.) Buol testified that the vacant lot next to Defendant's improved sale 3 was purchased for $82,000 on August 29, 2012, by the purchaser of Defendant's improved sale 3. (Ptfs' Ex 6 at 1-2.) Buol testified that he did not understand why Defendant did not use those land sales. (*See id.* at 1.)

The board of property tax appeals (BOPTA) determined that the 2011-12 real market value of the subject property was $171,000, with $115,000 allocated to the land and $56,000 allocated to the improvements. (Ptfs' Compl at 2.) The 2011-12 maximum assessed value of the subject property was $112,582. Defendant reported that "[c]ompression begins at [real market value] $123,462." (Def's Ltr at 4, Jul 30, 2012.) Buol verbally amended Plaintiffs' Complaint at trial to request a 2011-12 land real market value of $57,602. Defendant requests that the 2011-12 land real market value of $115,000 determined by BOPTA be sustained.

## II. ANALYSIS

The issue before the court is the land real market value of the subject property for the 2011-12 tax year. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor* (*Richardson*), TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citing *Gangle v. Dept. of Rev.*, 13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1), which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."[3]

The assessment date for the 2011-12 tax year was January 1, 2011. ORS 308.007; ORS 308.210.

The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue." ORS 308.205(2). The three approaches of value that must be considered are: (1) the cost approach; (2) the sales comparison approach; and (3) the income approach. OAR 150-308.205-(A)(2)(a). Although all three approaches must be considered, all three approaches may not be applicable in a given case. *Id.* The value of property is ultimately a question of fact. *Chart Development Corp. v. Dept. of Rev.*, 16 OTR 9, 11 (2001) (citation omitted).

Plaintiffs have the burden of proof and must establish their case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). "[I]t is not

---

[3] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2009.

enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005) (citations omitted). Competent evidence includes "testimony from licensed professionals such as appraisers, real estate agents[,] and licensed brokers." *Hausler v. Multnomah County Assessor*, TC-MD No 110509D, WL 5560673 at *4 (Nov 15, 2011). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

Both Buol and Grant presented evidence of sales that they considered comparable to the subject property. "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions." OAR 150-308.205-(A)(2)(c). "The court looks for arm's-length sale transactions of property similar in size, quality, age and location * * * in order to determine the real market value" of the subject property. *Richardson*, WL 21263620 at *3.

Buol presented evidence of sales from 2011 that ranged in price from $35,000 to $128,693. He did not make any adjustments to those sales for differences between the sales and the subject property. Buol also discussed a land sale for $82,000 on August 29, 2012. That sale occurred over one and one-half years after the January 1, 2011, assessment date. Moreover, it does not support Buol's requested land real market value of $57,602. The court finds that Buol's comparable sales evidence is inconclusive.

Buol's remaining evidence focused on his perceived defects in Defendant's valuation of the subject property. First, Buol argued that Defendant failed to use the same site adjustment for

/ / /

the subject property that Defendant used for other lots in "location 5" that are 0.09 acres or less. He requested that the court address that "correctible error" under ORS 311.205.

The court found Buol's testimony regarding the significance of various lot sizes confusing. Based on documents that he received from Defendant, Buol determined that lots smaller than 0.09-acres in the subject property neighborhood received a downward adjustment of 64 percent. In his view, the subject property land should have received a downward adjustment of 64 percent from the "base value" of $130,000. It is unclear how Buol determined the "base value" of the subject property land. Even if the court found that evidence persuasive, it would not support Buol's requested land real market value of $57,602. Moreover, Buol's reliance on ORS 311.205 for his requested relief is misplaced. ORS 311.205(1) authorizes "the officer in charge of the roll" to "correct errors or omissions in the roll" under certain circumstances. ORS 311.205(1) does not authorize or direct the court to order the assessor to correct errors on the assessment and tax roll.

Second, Buol argued that Defendant erred by relying upon sales of lots with "conforming uses" as comparable to the subject property, which included a "non-conforming" residential improvement under the applicable zone. Buol argued that zoning is a "governmental restriction" and Defendant failed to comply with ORS 308.205(2)(d), which states:

> "If the property is subject to governmental restriction as to use on the assessment date under applicable law or regulation, real market value shall not be based upon sales that reflect for the property a value that the property would have if the use of the property were not subject to the restriction unless adjustments in value are made reflecting the effect of the restrictions."

Buol testified that, in his view, the highest and best use of the subject property land as vacant is commercial development because the subject property is in the central commercial "C-2" zone. However, Buol did not provide any evidence of vacant commercial land sales.

Plaintiffs have failed to carry their burden of proof. Even though the burden has not shifted under ORS 305.427, the court has jurisdiction to determine the "real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

"A recent sale of the property in question is important in determining its market value. If the sale is a recent, voluntary, arm's length transaction between a buyer and seller, both of whom are knowledgeable and willing, then the sale price, while certainly not conclusive, is very persuasive of the market value." *Kem v. Dept. of Rev.* (*Kem*)*, 267 Or 111, 114, 514 P2d 1335 (1973). "Whether a transaction is so recent as to be persuasive of present value will depend upon the similarity of conditions affecting value at the time of the transaction and conditions affecting value at the time of the assessment." *Sabin v. Dept. of Rev.*, 270 Or 422, 426-427, 528 P2d 69 (1974). "In the absence of data indicating that 'the price paid was out of line with other market data material, we believe [a recent sale] to be one of the best and most satisfactory standards for the estimation of actual value although, admittedly, it is not conclusive.' " *Ernst Brothers Corp. v. Dept. of Rev.*, 320 Or 294, 300, 882 P2d 591 (1994) (citation omitted).

Plaintiffs purchased the subject property in February 2011 for $136,500 in what Buol characterized as an "arms length transaction." (Ptfs' Ex 3 at 1.) The realtor who handled the subject property sale also considered Plaintiffs' purchase to be an arm's-length transaction. (*Id.* at 16.) Plaintiffs' purchase of the subject property in February 2011 was "recent" as of the January 1, 2011, assessment date. For those reasons, the court finds that Plaintiffs' February 2011 purchase of the subject property is the best evidence of its total real market value as of January 1, 2011. Accepting as true Buol's testimony that Plaintiffs' purchase price included $10,000 of furnishings, Plaintiffs' purchase price indicates total real market value of $126,500.

Plaintiffs challenged only the 2011-12 land real market value of the subject property and, unfortunately, Plaintiffs offered no evidence of how their purchase price should be allocated between land and improvements. An additional problem is that a reduction in the 2011-12 total real market value of the subject property based on Plaintiffs' purchase price would not result in any tax savings to Plaintiffs. For the court to order a change to the tax roll, Plaintiff must be aggrieved. ORS 305.275(1)(a). To be aggrieved, the ordered change to the tax roll must result in a property tax reduction. The 2011-12 maximum assessed value of the subject property was $112,582 and Defendant reported that "[c]ompression begins at [real market value] $123,462." (Def's Ltr at 4, Jul 30, 2012.) Thus, even if the 2011-12 total real market value of the subject property were reduced to $126,500, Plaintiffs would not receive any tax savings. However, Plaintiffs are not appealing the subject property's total real market value. Plaintiffs are only requesting that the court determine the subject property's 2011-12 land real market value. The lack of evidence on how Plaintiffs' purchase price should be allocated prevents the court from determining whether Plaintiffs are aggrieved. Plaintiffs' appeal must be denied.

## III. CONCLUSION

After careful consideration, the court finds that Plaintiffs failed to carry their burden of proof. Although the evidence presented supports a total real market value of $126,500 for the 2011-12 tax year, the court cannot determine how that value should be allocated between land and improvements. Even if the court could determine how Plaintiffs' purchase price for the subject property should be allocated between land and improvements, Plaintiffs may not be aggrieved under ORS 305.275(1)(a). Plaintiffs' appeal must be denied. Now, therefore,

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ___ day of April 2013.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This Decision was signed by Magistrate Allison R. Boomer on April 22, 2013. The court filed and entered this Decision on April 22, 2013.*